# EXHIBIT B



May 7, 2014

Sheriff James Stuart,
Anoka County Sheriff's Office
13301 Hanson Blvd NW
Andover, MN 55304

Dear Sheriff Stuart,

We write to ask you to promptly review and revise your policy and practice with regard to immigration detainers sent to your office by the Immigration and Customs Enforcement (ICE) division of the Department of Homeland Security. These documents, ICE form I-247, which are also called "ICE holds," identify a prisoner in your custody. They ask you to continue to detain that prisoner for an additional 48 hours (excluding weekends and holidays) after he or she would otherwise be released.[1] Thus, they ask that you hold the prisoners for up to an additional 6 days if the 48-hour period occurs over a holiday weekend. We ask that you immediately stop the practice of holding prisoners in custody on the basis of these ICE detainers.

In the past, you may have believed that these detainers represent an order or a command from the federal government that you have a legal obligation to obey. Indeed, for many years, the wording of the I-247 form suggested that compliance with the federal request was mandatory. The wording of the form has changed, and it is now clear, and federal officials and recent court decisions agree, that these detainers represent a mere request, not a command. You have no legal obligation under federal law to honor or comply with the detainer's request to hold prisoners who would otherwise be released.[2]

In the last few years, as more courts and federal officials have acknowledged that detainers are mere requests, not commands, a growing number of local law enforcement agencies have revised their policies. To date, over fifty jurisdictions outside of Minnesota – including several major cities and two states – have abandoned their prior practice of automatically honoring all ICE detainers.[3] Just this month, Philadelphia and numerous Oregon counties joined more than a dozen other jurisdictions that had adopted policies that effectively
AMERICAN CIVIL
LIBERTIES UNION OF
MINNESOTA FOUNDATION
2300 MYRTLE AVENUE
SUITE 180
SAINT PAUL, MN 55114
T/651.645.4097
F/651.647.5948
support@aclu-mn.org
www.aclu-mn.org

---

[1] ICE issues immigration detainers pursuant to 8 C.F.R. § 287.7.
[2] In this letter, references to "honoring" detainers refer only to honoring the request to hold prisoners in custody after they would otherwise be released.
[3] See, e.g., Catholic Immigration Network, "States and Localities That Limit Compliance with ICE Detainer Requests (Jan 2014)," (listing over twenty jurisdictions), available at https://cliniclegal.org/resources/articles-clinic-states-and-localities-limit-compliance-ice-detainer-requests-jan-2014; Immigrant Law Group PC, "Recent Developments on ICE Holds in Oregon," updated April 25, 2014 (listing 28 Oregon counties), available at http://www.ilgrp.com/iceholds.



PRINTED WITH
100% WINDPOWER

1



prohibit honoring any ICE detainers.[1] Sheriffs in several additional localities, including major metropolitan areas like Los Angeles,[2] San Francisco,[3] and Chicago,[4] now refuse to honor immigration detainers when the subjects have only minor criminal records.[5]

Because federal law does not require you to honor detainers, you must choose whether to honor them or not. In this letter, we will outline multiple legal and policy reasons why your sheriff's department must promptly join the growing number of law enforcement agencies that has chosen to stop honoring them altogether. First, around the country, sheriffs are facing (and losing) lawsuits filed by prisoners who argue that extending their incarceration on the basis of an immigration detainer violated their constitutional rights. Second, your choice to honor immigration detainers incurs substantial costs not only in dollars, but also in diminished community trust. And finally, this letter explains that sheriffs in Minnesota simply have no authority under Minnesota law to deprive someone of liberty on the basis of an immigration detainer.

1. **Immigration Detainers are not Warrants**

Immigration detainers are not warrants;[6] they are not court orders; they are not issued or approved by judges. Instead, they are unsworn documents that may be issued by a wide variety of immigration enforcement agents and deportation officers. 8 C.F.R. § 287.7(b). They are frequently issued without even a supervisor's review and simply because an ICE agent has "initiated an investigation" to determine whether a person may be deportable. They do not represent a finding of a person's immigration status. The fact that ICE has issued a detainer does

---

[1] *See, e.g.*, Gosia Wozniacka, "Oregon court decision adds to several cases that shed scrutiny on use of immigration detainers," StarTribune, April 17, 2014, *available at* http://www.startribune.com/politics/national/255713171.html; Andrea Castillo, "Six Oregon counties join metro area sheriff's offices in suspending immigration detainer policies," THE OREGONIAN, Apr. 17, 2014, available at http://www.oregonlive.com/pacific-northwest-news/index.ssf/2014/04/five_oregon_counties_join_metr.html. These twenty-plus jurisdictions effectively prohibit honoring detainers by declining to hold individuals for ICE on the basis of an immigration detainer unsupported by a warrant or court order and/or by prohibiting the expenditure of any taxpayer resources to hold individuals on a detainer.
[2] *See* Cindy Chang, "Baca will no longer turn over low-level offenders to immigration," LOS ANGELES TIMES, Dec. 5, 2012, *available at* http://nowcrj.org/wp-content/uploads/2013/08/Los-Angeles-County-ICE-Hold-Policy-To-Be-Promulgated.pdf.
[3] *See* Brent Begin, "San Francisco County jail won't hold inmates for ICE," SAN FRANCISCO CHRONICLE, May 6, 2011, available at http://www.sfexaminer.com/sanfrancisco/san-francisco-county-jail-wont-hold-inmates-for-ice/Content?oid=2174504.
[4] *See* Chicago Municipal Code § 2-173-005 *et. al, available at* http://www.immigrationpolicy.org/sites/default/files/docs/SO2012-4984.pdf.
[5] *See* n.2, *supra.* Notably, in 2013, California and Connecticut adopted their version of the Trust Act, which applies throughout the state and forbids law enforcement authorities to comply with immigration detainers issued on prisoners who do not have a significant criminal history. *See* Cal. Gov. Code § 7282 (California Trust Act); Conn. Gen. Stat. § 54-192h (Connecticut Trust Act).
[6] *See, e.g., Buquer v. Indianapolis*, 797 F. Supp. 2d 905, 911 (S.D. Ind. 2011) ("A detainer is not a criminal warrant but rather a voluntary request . . . ."); *Morales v. Chadbourne*, 2014 U.S. Dist. LEXIS 19084, at *48 (D. R.I. Feb. 12, 2014) ("Warrants are very different from detainers . . . ."). In addition, as discussed in more detail at footnote 32, *infra*, administrative warrants issued by ICE are also very different from the criminal warrants to which Minnesota law enforcement officers are accustomed. ICE administrative warrants are not issued by a judge, and they lack the procedural protections required by the Minnesota Constitution.

not mean that the subject is actually a non-citizen subject to deportation. ICE frequently issues immigration detainers without even probable cause to believe the subject is deportable. Indeed, with disturbing regularity, ICE has been issuing detainers erroneously against United States citizens and legal residents who are not subject to deportation.[7]

Immigration detainers are also nothing at all like the criminal detainers that are governed by the Interstate Agreement on Detainers, C.R.S. §§ 24-60-501 to 507 or the Uniform Mandatory Disposition of Detainers Act, C.R.S. §§ 16-14-101 to 108. Criminal detainers do not request or purport to authorize additional time in custody; they are lodged when a prisoner has actual criminal charges pending in a different jurisdiction, and the statutes provide prisoners with a prompt procedural mechanism for disputing or resolving those pending charges. Immigration detainers, in contrast, are lodged when there are *no* pending immigration proceedings; they ask the custodian to extend a prisoner's time in custody, and they lack any due process mechanisms that prisoners can invoke to contest the extended custody.

### 2. Immigration Detainers are Requests, Not Commands and Complying with that Request May Result in Legal Liability of a Sheriff

In part because of the total absence of procedural protections, extending the time of a prisoner's custody solely on the basis of an immigration detainer raises serious constitutional concerns. These concerns have been accentuated for sheriffs like yourself as it has become increasingly clear that ICE detainers are mere requests, not commands. The result is that *you* must take full responsibility for the legal and policy consequences of deciding to honor them.

#### A. Federal officials acknowledge that detainers are requests, not commands

ICE officials and their attorneys have acknowledged in various forums that immigration detainers represent a mere request, not a command:

- In 2010, the County Attorney of Santa Clara County, California, posed a number of written questions to ICE about the soon-to-be-implemented Secure Communities program. David Venturella, Assistant Director of ICE's Secure Communities program, provided a detailed response, repeating the question and supplying an answer, as follows:
    - Question: "Is it ICE's position that localities are required to hold individuals pursuant to Form I-247 or are detainers merely requests with which a county could legally decline to comply?"
    - Answer: "ICE views an immigration detainer as a request that a law enforcement agency maintain custody of an alien who may otherwise be released . . . ."[8]

---

[7] According to data compiled by Syracuse Transactional Records Access Clearinghouse (hereinafter "TRAC"), in a four-year period ending in 2012, ICE placed detainers on 834 U.S. citizens and 28,489 legal permanent residents. TRAC, "ICE Detainers Placed on U.S. Citizens and Legal Permanent Residents," *available at* http://trac.syr.edu/immigration/reports/311/.

[8] *See* Letter from David Venturella to Miguel Martinez, undated (hereinafter "Venturella Letter"), *available at* http://www.scribd.com/doc/38550589/ICE-Letter-Responding-to-SCC-Re-S-Comm-9-28-10.

3

- In a brief filed in 2013 in a case challenging ICE detainers, government attorneys representing the Department of Homeland Security acknowledged that "ICE detainers issued pursuant to 8 C.F.R. § 287.7 are voluntary requests."[9] In response to a discovery request in that case, the DHS attorneys made a formal admission: "Defendants admit that ICE detainers . . . do not impose a requirement upon state or local law enforcement agencies."[10]

- In a letter dated October 17, 2013, Representative Keith Ellison and 48 additional members of Congress wrote to the Acting Secretary of the Department of Homeland Security. They asked for clarification that "I-247 detainers are requests, imposing no requirements on [local law enforcement agencies]." On February 25, 2014, David Ragsdale, Acting Director of ICE, replied. He confirmed that ICE detainers "are not mandatory as a matter of law."[11]

### B. Recent court decisions recognize that detainers are requests, not commands, and sheriffs may be legally liable for complying with that request

Three 2014 court decisions have squarely held that an immigration detainer is merely a request, not a command that local law enforcement must obey. The result is that local law enforcement agencies cannot rely on the ICE detainer to shield them from liability. Thus, local law enforcement agencies are on the hook when prisoners show that detaining them solely on the authority of an immigration detainer violates rights guaranteed by such provisions as Fourth Amendment, the Due Process Clause, or local tort law. As all three decisions make clear, a sheriff clearly violates the Fourth Amendment when he holds a prisoner on the basis of an ICE detainer that is not supported by probable cause.

#### i. *Galarza v. Szalczyk* (3rd Cir. 2014)

The most extensive explanation of why detainers are requests, not commands, appears in *Galarza v. Szalczyk*, 2014 U.S. App. LEXIS 4000 (3rd Cir. March 4, 2014). Mr. Galarza, a United States citizen, was arrested and posted bail. The jail refused to release him, however, because ICE had issued a detainer that said that "investigation has been initiated" to determine whether Galarza was deportable. *Id.* at *5-*6. He spent three days in jail before ICE recognized that he was a citizen and withdrew the detainer. *Id.* at *2. When Galarza sued, the jail argued that it was legally obligated to comply with the detainer's request to hold Galarza an additional 48 hours after bail had been posted.

---

[9] *Jimenez v. Morales*, No. 11-CV-05452 (N.D. Il.), Dkt # 107, Def. Mem. In Support of Mtn for Partial J., at 8-9, *available at* http://www.immigrantjustice.org/sites/immigrantjustice.org/files/Government%20Brief%20in%20Support%20of%20Motion%20for%20Partial%20Judgment%20on%20Pleadings.pdf.

[10] *Jimenez v. Morales*, No. 11-CV-05452 (N.D. Ill.), Def's Resp. to Pl's First Set of Requests For Admissions, Resp. to Request No. 16, *available at* http://www.immigrantjustice.org/sites/immigrantjustice.org/files/Govt%27s%20Responses%20to%20First%20Requests%20for%20Admission.pdf.

[11] http://www.notonemoredeportation.com/wp-content/uploads/2014/02/13-5346-Thompson-signed-response-02.25.14.pdf

The Third Circuit squarely rejected the jail's argument, holding that "immigration detainers do not and cannot compel a state or local law enforcement agency to detain suspected aliens . . . ." *Id.* at *3. If an immigration detainer were indeed a command, the court explained, it would violate the anti-commandeering principle of the Tenth Amendment:

> Under the Tenth Amendment, immigration officials may not order state and local officials to imprison suspected aliens subject to removal at the request of the federal government. Essentially, the federal government cannot command the government agencies of the states to imprison persons of interest to federal officials.
> *Id.* at *23-*24.

Thus, the plaintiffs' claims against the jail could proceed.

### ii. *Morales v. Chadbourne* (D. R.I. Feb. 12, 2014)

Earlier this year, a federal district court in Rhode Island also held that a jail could not escape liability by claiming that it was compelled to honor immigration detainers. In *Morales v. Chadbourne*, 2014 U.S. Dist. LEXIS 19084 (D. R.I. Feb. 12, 2014), a United States citizen was granted a personal recognizance bond on a state criminal charge. *Id.* at *6. She was not released, however, because ICE sent an immigration detainer to the jail asking that it continue to hold Ms. Morales for 48 additional hours. *Id.* at *6-*7. The box checked on the detainer form stated that ICE had "initiated an investigation" to determine whether Ms. Morales was subject to deportation. *Id.* at *17. Ms. Morales spent an additional day in jail, solely on the purported authority of the ICE detainer. After ICE agents took Ms. Morales into custody, they released her after realizing she was a citizen. *Id.* at *7.

In a motion to dismiss, the jail authorities argued that they had no liability because they detained Ms. Morales on the basis of what they characterized as a facially valid immigration detainer, which they analogized to an arrest warrant. *Id.* at *46-*48. The court rejected the argument, explaining that "[w]arrants are very different from detainers, and there was no accompanying warrant in this case." *Id.* at *48. The court quoted *Buquer v. Indianapolis*, 797 F. Supp. 2d 905, 911 (S.D. Ind. 2011), which explained that "a detainer is not a criminal warrant, but rather a voluntary request that the law enforcement agency 'advise [DHS] prior to release of the alien, in order for [DHS] to arrange to assume custody.'" *Id.* at *48. The court held that the jail must answer the charge that it deprived Ms. Morales of liberty without adequate legal authority.

### iii. *Miranda-Olivares v. Clackamas County* (D. Ore. Apr. 11, 2014)

In *Miranda-Olivares v. Clackamas County*, 2014 U.S. Dist. LEXIS 50340 (D. Ore. Apr. 11, 2014), a federal district court in Oregon held that a county violated the Fourth Amendment when its jail held the plaintiff in custody solely on the basis of an immigration detainer. The plaintiff was arrested on a minor criminal charge, and ICE issued a detainer the following day. Family members were prepared to post the $500 bail, but jail officials on multiple occasions said

that posting bail would not result in release, because the jail would keep Ms. Miranda-Olivares in custody pursuant to the immigration detainer. After two weeks, she resolved her criminal case with a sentence of time served. Instead of releasing Ms. Miranda-Olivares, the jail kept her in custody an additional day, until ICE assumed custody. The plaintiff argued that the county was legally liable for unjustifiably depriving her of liberty, solely on the basis of the immigration detainer, when it 1) denied her release on bail and 2) refused to release her immediately after she resolved her state court case.

The county argued that the detainer was an order from the federal government that it was legally obligated to carry out. The court rejected that argument, explaining that the detainer regulation, 8 C.F.R. § 287.7, "does not require LEAs [Law Enforcement Agencies] to detain suspected aliens upon receipt of a Form I-247 from ICE." *Id.* at *23. The court further concluded "that the Jail was at liberty to refuse ICE's request to detain Miranda-Olivares if that detention violated her constitutional rights." *Id.* at *23-*24. The court granted summary judgment to the plaintiff, holding that the county imprisoned her without probable cause in violation of the Fourth Amendment. *Id.* at *33. Within a few days of the court's ruling, sheriff's offices in twenty-eight Oregon counties announced that they would stop honoring immigration detainers.[12]

### 3. Your Sheriff's Department Incurs Unnecessary Costs in Dollars, Diminished Public Safety, and Reduced Community Trust When It Chooses To Honor Immigration Detainers

Enforcing immigration law is the responsibility of the federal government. Local law enforcement agencies incur substantial costs when they choose to honor immigration detainers. These costs include not only concrete fiscal and financial expenditures that can be measured in dollars, but also the cost of strained relations and lack of trust with Minnesota's large immigrant community.

### A. Honoring ICE detainers is expensive

Immigration detainers impose significant costs that are not reimbursed by the federal government. It is your sheriff's department, not ICE that bears the costs of incarcerating people for up to six days on an ICE detainer.[13] This cost is significant. Between October 2011 and August 2013, ICE issued over 5,300 detainers to Minnesota jails.[14] Almost every county jail in Minnesota was asked to hold prisoners past their release date on the basis of a detainer.[15]

---

[12] *See* Immigrant Law Group PC, "Recent Developments on ICE Holds in Oregon," updated April 25, 2014, *available at* http://www.ilgrp.com/iceholds; *see also* Andrea Castillo, "Immigration detainer changes spread across Oregon: 23 counties have modified their policies so far," THE OREGONIAN, Apr. 24, 2014, *available at* http://www.oregonlive.com/pacific-northwest-news/index.ssf/2014/04/immigration_detainer_changes_s_2.html.
[13] Pursuant to 8 C.F.R. § 287.7(e), ICE is not responsible for reimbursing a local law enforcement agency for the cost of incarcerating any individual against whom a detainer is lodged until "actual assumption of custody" by ICE.
[14] *See* TRAC, "ICE Detainers Issued for Facilities by Level of Most Serious Conviction," (data by state/facility), *available at* http://trac.syr.edu/immigration/reports/343/include/table3.html. Ian Bratlie, "ICE Holds: Costing Minnesotans Money and Much More," The Hennepin Lawyer, March 2012.
[15] *See* TRAC, "ICE Detainers Issued for Facilities by Level of Most Serious Conviction," (data by state/facility), *available at* http://trac.syr.edu/immigration/reports/343/include/table3.html..

The financial burden your sheriff's department bears for its choice to honor immigration detainers is even greater. Several studies have concluded that the presence of an immigration detainer typically doubles the amount of a time that a prisoner spends in pre-trial detention.[16] Because of these extended pre-trial stays, a study by the Colorado Fiscal Institute estimated that Colorado is spending $13 million per year detaining and housing suspected immigration violators.[17] An unpublished internal ACLU-MN study of ICE costs in Minnesota found that jails were spending an average of $125 per day housing suspected immigration violators, costing tax payers millions of dollars.

In addition to detention costs, your sheriff's department faces the very real risk of legal liability if it continues to hold prisoners on the basis of ICE detainers. Lawsuits like the three discussed earlier in this letter are becoming increasingly frequent, with increasing success for plaintiffs. These lawsuits are not only expensive to litigate, but may result in fiscal liability for Minnesota counties. In 2011, for example, after a lawsuit brought by the ACLU of Colorado, Jefferson County agreed to pay $40,000 for unjustifiably holding Luis Quezada on an ICE detainer.[18] In 2009, New York City agreed to pay $145,000 to settle a lawsuit by a man who was wrongly held on ICE detainers.[19] In 2010, Spokane County Washington agreed to pay $35,000 to a man who was wrongly held without bail for 20 days because of an ICE detainer.[20] As detailed above, three federal courts in 2014 have ruled in favor of plaintiffs who sued county jails for holding them solely on the authority of an immigration detainer. While these cases have yet to be reduced to a dollar sum, the liability of the jailers is quite clear. Importantly, ICE refuses to indemnify localities found liable for choosing to honor detainers.[21]

### B. Honoring ICE detainers undermines public safety and diminishes community trust in law enforcement

---

[16] Three such studies are cited in ACLU of Maryland, RESTORING TRUST: HOW IMMIGRATION DETAINERS IN MARYLAND UNDERMINE PUBLIC SAFETY THROUGH UNNECESSARY ENFORCEMENT, Nov. 2013, at p. 9, n.15, *available at* https://immigrantjustice.org/sites/immigrantjustice.org/files/ACLU%20Maryland--Detainer%20Report.pdf.

[17] Colorado Fiscal Institute, MISPLACED PRIORITIES: SB90 & THE COSTS OF LOCAL COMMUNITIES, Dec. 2012, at p. 11, *available* at http://www.coloradofiscal.org/wp-content/uploads/2013/05/2013-3-1-v.2-SB90-Misplaced-Priorities-Ed.pdf. Studies in other jurisdictions yield similar findings. *See* ACLU of Maryland, RESTORING TRUST: HOW IMMIGRATION DETAINERS IN MARYLAND UNDERMINE PUBLIC SAFETY THROUGH UNNECESSARY ENFORCEMENT, Nov. 2013, at p. 9, n.15, *available at* https://immigrantjustice.org/sites/immigrantjustice.org/files/ACLU%20Maryland--Detainer%20Report.pdf

[18] *See* "JeffCo Sheriff to pay $40k to settle claim of illegally imprisoning Colorado resident," ACLU of Colorado press release, *available at* http://aclu-co.org/jeffco-sheriff-to-pay-40k-to-settle-claim-of-illegally-imprisoning-colorado-resident/.

[19] Settlement Agreement, *Harvey v. City of New York*, Case No. 1:07-cv00343-NG-LB, United States District Court, Eastern District of New York, *available at* http://www.legalactioncenter.org/sites/default/files/docs/lac/Harvey%20v.%20City%20of%20NY%20Stip%20Dismissal%20and%20Settlement.pdf.

[20] *See* "Northwest Immigrant Rights Project & Center for Justice Achieve Settlement in Case of Immigrant Detained Unlawfully," Northwest Immigrants' Rights Project press release, *available at* http://www.nwirp.org/news/viewmediarelease/15.

[21] See n.10, *supra*, Venturella Letter, page 3 ("ICE will not indemnify localities for any liability incurred [because of detention based on an ICE detainer]"), *available at* http://www.scribd.com/doc/38550589/ICE-Letter-Responding-to-SCC-Re-S-Comm-9-28-10.

When you choose to comply with ICE detainers, you risk seriously undermining both public safety and community trust by transforming local law enforcement, in the eyes of the community, into proxy immigration enforcers. The public pronouncements of ICE propagate a myth that ICE's detainer system protects public safety by selecting only serious criminal aliens for deportation proceedings. The reality is different. The vast majority of detainers are lodged against persons with no criminal conviction or only a minor conviction.[22] Across the country, the top three criminal offenses committed by individuals with ICE detainers are: (1) driving under the influence, (2) trafficoffense; and (3) marijuana possession.[23]

In Minnesota, an incredible 54% of immigration detainers are lodged against individuals with **no criminal record**.[24] These are individuals who would typically be released promptly from pre-trial detention and returned to their communities, but instead are often held for lengthy periods because of an ICE hold.[25]

Many individuals targeted by detainers are persons who have been living and working peacefully in the United States, sometimes for years, and who come into contact with law enforcement through traffic stops or other routine matters – or even as victims of domestic violence or other crimes. Immigrants understand that any encounter with the police – whether it's a traffic stop, participation in a police investigation, or requesting help from the police – can lead to computer checks of family and friends at the scene. Immigrants understand that discovery of a warrant for even the most minor offense, such as failure to appear on a traffic ticket, can lead to arrest and ultimate deportation when law enforcement honors ICE detainers. It is no surprise then, that a recent study confirmed that Latinos, both documented and undocumented, often fear even minimal contact with the police, including something as benign as reporting a crime or cooperating with a criminal investigation, because of fears about potential immigration consequences for themselves or their family members.[26]

When you choose to honor ICE detainers, particularly when the subjects have little or no criminal history, you send a strong signal to the friends, family and community of those detained individuals that deportation is a potential consequence of any interaction with law enforcement. This signal has predictable effects. First, it deters persons who have undocumented friends or relatives – including citizens and legal permanent residents as well as undocumented immigrants

---

[22] TRAC, "Few ICE Detainers Target Serious Criminals," *available at* http://trac.syr.edu/immigration/reports/330/.
[23] TRAC, "Few ICE Detainers Target Serious Criminals," *available at* http://trac.syr.edu/immigration/reports/330/.
[24] TRAC, "Targeting of ICE Detainers Varies Widely by State and by Facility," *available at* http://trac.syr.edu/immigration/reports/343/
[25] *See* ACLU of Maryland, RESTORING TRUST: HOW IMMIGRATION DETAINERS IN MARYLAND UNDERMINE PUBLIC SAFETY THROUGH UNNECESSARY ENFORCEMENT, Nov. 2013, at 9 ("One damaging side effect [of honoring detainers] is to unnecessarily prolong the pretrial detention of individuals with the most minor offenses who pose no public safety threat or flight risk and who ordinarily would have been released on minimal bond."), *available at* https://immigrantjustice.org/sites/immigrantjustice.org/files/ACLU%20Maryland--Detainer%20Report.pdf.
[26] University of Illinois at Chicago, Department of Urban Planning and Policy, INSECURE COMMUNITIES: LATINO PERCEPTIONS OF POLICE INVOLVEMENT IN IMMIGRATION ENFORCEMENT, May 2013, *available at* http://www.uic.edu/cuppa/gci/documents/1213/Insecure_Communities_Report_FINAL.pdf.

– from contacting law enforcement for any reason.[27] Second, it diminishes the goodwill towards peace officers that your sheriff's department undoubtedly seeks to foster with Minnesota's substantial immigrant community. The Major Cities Chiefs Association has come to just this conclusion, stating:

> Without assurances that contact with the police would not result in purely civil immigration enforcement action, the hard won trust, communication and cooperation from the immigrant community would disappear. Such a divide between the local police and immigrant groups would result in increased crime against immigrants and in the broader community, create a class of silent victims and eliminate the potential for assistance from immigrants in solving crimes or preventing future terroristic acts.[28]

In sum, by entangling your sheriff's department in immigration enforcement, honoring detainers undermines public safety and community trust in local law enforcement and contributes to a culture of fear and suspicion. By shifting the burden of legal liability and most of the direct and indirect costs of additional time in detention to local jurisdictions, honoring detainers imposes significant financial costs. Thus, honoring immigration detainers comes at significant social, economic, and public safety costs to your sheriff's department.

4. **Minnesota Sheriffs Have No Authority Under Minnesota Law To Hold Someone On An Immigration Detainer**

As explained earlier, courts have held, and the federal officials acknowledge, that immigration detainers are not commands that local law enforcement authorities are required to obey. When a Minnesota sheriff honors an immigration detainer, the sheriff is making a choice, not discharging a mandatory duty. As recent court decisions have made clear, a sheriff choosing to honor an immigration detainer is legally liable if that choice is not justified by law. In numerous jurisdictions around the country, imprisonment that is justified solely on the basis of immigration detainers is being challenged – with increasingly frequent success – as a violation of federal constitutional rights.

Even if you believe you are prepared to defend against such legal claims, however, you face another formidable obstacle if you choose to continue to honor immigration detainers. In Minnesota, sheriffs do not have the legal authority to make that choice — nothing in Minnesota law allows a sheriff to deprive someone of liberty on the basis of an immigration detainer.

In Minnesota, the authority of a peace officer to make an arrest or otherwise deprive a person of liberty derives from the Minnesota Constitution and the Minnesota statutes.

---

[27] This disincentive to report is particularly troubling in the case of victims of domestic violence. When calling police, they must not only overcome their fear of the abuser's retaliation, but also the additional fear that reporting their abuse will lead to immigration consequences for them or their family.

[28] Major Cities Chiefs Immigration Committee Recommendations for Enforcement of Immigration Laws by Local Police Agencies, at 6, *adopted by* Major Cities Chiefs Association, June 2006, *available at* http://www.houstontx.gov/police/pdfs/mcc_position.pdf.

- A peace officer may arrest a person when he has a warrant commanding the person's arrest. Minn stat. § 629.30(1). An immigration detainer is not a warrant.[29]

- A peace officer may make a warrantless arrest when he has probable cause to believe a crime was committed and probable cause to believe that the suspect committed it. Minn Stat § 629.34. Even in a case where an immigration detainer is actually based on probable cause to believe the subject is present in violation of the federal immigration laws, that status is not a crime under federal law.[30] Nor is it a crime under Minnesota law.

Minnesota peace officers must rely on the authority of statutes that expressly provide them the authority to deprive persons of liberty when specified conditions are met.[31] Nowhere does Minnesota law authorize peace officers to deprive persons of liberty on the ground that they are suspected of a civil violation of federal immigration law. **When Minnesota sheriffs rely on an immigration detainer to deprive a person of liberty, they act without lawful authority.** In doing so, they violate the Minnesota Constitution, which, like the Fourth Amendment, forbids unreasonable seizures.

After you and your legal counsel review this letter and your current policies, we are confident that you will agree that a prompt change in policy is required, and that you must stop holding persons in custody on the basis of immigration detainers. We ask that you provide the ACLU a written response to this letter by **June 2, 2014**.

Sincerely,


Charles SamuelsonTeresa Nelson
Executive DirectorLegal Director

---

[29] ICE sometimes issues administrative "warrants" on ICE form I-200, and ICE sometimes relies on the issuance of an administrative warrant when it asks sheriffs to hold prisoners on the basis of an ICE detainer. Minnesota peace officers have no authority, however, to deprive persons of liberty on the basis of ICE administrative warrants. The authority of Minnesota peace officers to deprive persons of liberty on the basis of a warrant assumes a warrant that complies with the provisions of the Fourth Amendment and the Minnesota Constitution. A constitutionally-sufficient warrant is issued only upon oath or affirmation of facts submitted to a judicial officer, one who is "neutral and detached" from enforcement activities, *Coolidge v. New Hampshire*, 403 U.S. 443, 450 (1971), and only if the judicial officer determines that the facts demonstrate probable cause. In contrast, ICE administrative warrants are not issued by judges or judicial officers. Indeed, ICE regulations allow these administrative warrants to be issued by ICE enforcement officers themselves. Because of these deficiencies, a Connecticut court ruled that an arrest made on the basis of an ICE administrative warrant was, essentially, a warrantless arrest. *See El Badrawi v. DHS*, 579 F. Supp. 2d 249, 276 (D. Conn. 2008).
[30] See *Arizona v. United States*, 132 S. Ct. 2492, 2505 (2012) ("As a general rule, it is not a crime for a removable alien to remain present in the United States.").
[31] Minnesota statutes provide authority to deprive persons temporarily of liberty in additional specific situations, when certain conditions are met, none of which apply to immigration detainers.